United States District Court
Southern District of Texas
**ENTERED**
October 05, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | **CRIMINAL NO. 5:98-620-1** |
| § | | |
| **ERNESTO ALONZO RAMIREZ,** § | | |
| Defendant. § | | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant Ernesto Alonzo Ramirez's Motion for Compassionate Release (D.E. 1185), to which the Government has responded (D.E. 1191) and Defendant has replied (D.E. 1193).

**I. BACKGROUND**

Defendant was the leader and organizer of a continuing criminal enterprise (CCE) that shipped more than a ton of marijuana and more than 5 kilograms of cocaine from Texas to Ohio and other locations in the United States from 1992–1998, producing more than $700,000 in laundered drug proceeds. His criminal activities culminated in the execution of Audrey Baker, a government cooperator.

A total of 24 members of the drug conspiracy were prosecuted. Defendant was charged with CCE; drug conspiracy; nine counts of possession with intent to distribute marijuana; conspiracy to launder monetary instruments; and two counts of money laundering. On July 7, 1999, he pled guilty to CCE and money laundering conspiracy. The written plea agreement contemplated a recommendation by the Government for a 25-year sentence under U.S.S.G. § 5K1.1 if Defendant provided substantial assistance regarding his drug trafficking and money laundering activities, in particular Baker's murder; however, he refused to cooperate, and no § 5K1.1 motion was filed.

1

The Presentence Investigation Report (PSR, D.E. 865) calculated a total offense level of 47 for the CCE charge, with a criminal history category (CHC) of III, resulting in a Guideline sentence of Life imprisonment.[1] Defendant's offense level for the money laundering conspiracy was 34 after enhancements because he knew the funds were proceeds of an unlawful activity involving controlled substances; the value of the funds exceeded $600,000; and he was a leader/organizer in the drug trafficking organization involving five or more participants. The Court sentenced Defendant to Life for the CCE and a concurrent sentence of 20 years for the money laundering conspiracy—the maximum possible sentences under the respective statutes. At the time, the Sentencing Guidelines were mandatory.

Defendant has served approximately 23 years of his Life sentence. He now moves the Court for compassionate release due to: (1) his Life sentence despite pleading guilty; (2) his youth at the time of the offense; (3) the potential disparity between his Life sentence and the sentence he could have received under current law; (4) his medical condition and vulnerability to COVID-19; and (5) his efforts towards rehabilitation while incarcerated. Defendant's administrative request for compassionate release based on "debilitated medical condition . . . including rectal prolapse, back/knee pain, and other issues" was denied by the warden on December 21, 2020. The Government opposes the motion because Defendant has failed to satisfy his burden to show that extraordinary and compelling reasons warrant his release at this time, he is a danger to the community, and the factors under 18 U.S.C. § 3553(a) counsel against release.

## II. LEGAL STANDARD

The First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), allows a prisoner to move for a sentence reduction under certain circumstances; at issue here is colloquially called

---

1. The CCE offense level was derived from the underlying drug conspiracy and first degree murder involved in the offense. PSR ¶ 83.

"compassionate release." *See United States v. Shkambi*, 993 F.3d 388, 390–92 (5th Cir. 2021). A prisoner may move for compassionate release when "extraordinary and compelling reasons" warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). "[T]his statutory phrase requires a prisoner to show he 'faces some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner' that leads 'irresistibly' to the conclusion that this prisoner has a 'singular' and 'remarkable' need for early release." *United States v. McMaryion*, 2023 WL 4118015, at *1 (5th Cir. June 22, 2023) (quoting *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

If the district court finds that extraordinary and compelling reasons warrant a sentence reduction, "then the court 'may' reduce the defendant's sentence 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Ward v. United States*, 11 F.4th 354, 359–60 (5th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). The applicable § 3553(a) factors include, among others: the defendant's history and characteristics; the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; the need to deter criminal conduct and protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the need to avoid unwarranted sentencing disparities among similarly-situated defendants; and the various kinds of sentences available. *See* 18 U.S.C. §§ 3553(a)(1)-(7). "The district court has discretion to deny compassionate release if the Section 3553(a) factors counsel against a reduction." *Ward*, 11 F.4th at 360.

## III. ANALYSIS

### A. Extraordinary and Compelling Circumstances

#### 1. Mandatory Life Sentence

The crux of Defendant's motion is that the Court should reconsider his Life sentence under the factors set forth in 18 U.S.C. § 3553(a) because the Sentencing Guidelines are no longer mandatory post-*Booker*. The Fifth Circuit recently made clear that claims arising from non-retroactive changes in criminal law are not cognizable under 18 U.S.C. § 3582(c)(1). *McMaryion*, 2023 WL 4118015 at *2 ("[A] prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither extraordinary nor compelling."). Thus, Defendant's claim that he could receive a lower sentence post-*Booker* is not cognizable under existing Fifth Circuit precedent.

Defendant urges the Court to consider forthcoming amendments to the Sentencing Guidelines, effective November 1, 2023, which provide that non-retroactive changes in the law may constitute extraordinary and compelling circumstances under 18 U.S.C. § 3582(c)(1)(A):

> UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6) (2023).

The Court finds that Defendant would not qualify for a sentence reduction under U.S.S.G. § 1B1.13(b)(6), as amended, because a Life sentence would still be advisory under the Guidelines, and, as explained, *infra*, Defendant has failed to convince the Court that he deserves a below-Guideline sentence under 18 U.S.C. § 3553(a).

4

### 2. COVID-19 Concerns

Defendant maintains that he is especially susceptible to communicable diseases like COVID-19 because he contracted salmonella while in custody, causing a cascade of medical problems that have plagued him ever since, including a rectal prolapse and the loss of a portion of his intestine. He claims to have numerous other risk factors for COVID-19, including "elderly advanced age" (Defendant is 44), chronic knee pain, shoulder surgery, carpal tunnel, dislocated discs, and being Hispanic.

The Fifth Circuit has stated that the mere *risk* of severe illness or death from COVID-19 is not extraordinary, and it has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015 at *2 (5th Cir. June 22, 2023) (citing *United States v. Thompson*, 984 F.3d 431, 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19); *United States v. Rodriguez*, 27 F.4th 1097, 1098–1100 (5th Cir. 2022) (denying relief where COVID-19 fearing movant suffered from heart failure)). Thus, Defendant's claim that he is entitled to a sentence reduction based on his susceptibility to COVID-19 is not cognizable under existing Fifth Circuit precedent.

The Court is aware that forthcoming amendments to the Sentencing Guidelines, effective November 1, 2023, provide that increased vulnerability to infectious disease may constitute extraordinary and compelling circumstances under 18 U.S.C. § 3582(c)(1)(A), where:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D)(i)-(iii) (2023).

The Court finds Defendant has failed to demonstrate that he meets the criteria set forth in U.S.S.G. § 1B1.13(b)(1)(D), as amended. He is also fully vaccinated against COVID-19. Because he is "at little-to-no risk of severe COVID-19 [] after receiving his second [vaccine] dose, there are no 'extraordinary and compelling reasons' justifying a compassionate release in this case." *United States v. Groom*, 2021 WL 1220225, at *2 (S.D. Ohio Apr. 1, 2021). *See also e.g.*, *United States v. Rodriguez*, 2021 WL 2635381, at *4 (S.D. Tex. June 25, 2021); *United States v. Beltran*, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021); *United States v. Schad*, 2021 WL 1845548, at *3 (S.D. Tex. May 5, 2021); *United States v. Wedding*, 2:19-CR-1693 (S.D. Tex. Apr. 8, 2021).

### 3. Rehabilitative Efforts

Defendant further emphasizes his post-sentencing rehabilitative efforts. According to his Individualized Needs Plan – Program Review, he has completed over 100 classes and received over 80 certificates in custody, including his GED. He currently works as a Unit Orderly and was married by remote ceremony on March 1, 2022. Defendant points out that "defendants convicted of similarly situated crimes and, more importantly worse crimes [] have been granted compassionate release, even prior to the Supreme Court's ruling in *Concepcion*." D.E. 1193, p. 5.

To be sure, "other defendants convicted of both capital and other violent crimes and sentenced to life have been released by district courts in light of the pandemic." *United States v. Rios*, 2020 WL 7246440, at *1 (D. Conn. Dec. 8, 2020) However, those defendants demonstrated not only an increased vulnerability to COVID-19, but also extraordinary rehabilitative efforts and

minimal to non-existent prison disciplinary histories.[2] While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone. *See* U.S.S.G. § 1B1.10, app. n.1(B)(iii). As explained *supra*, Defendant has not demonstrated that he is especially vulnerable to COVID-19, that he would receive a lower sentence under current law, or that other extraordinary and compelling circumstances exist. Moreover, while his academic and vocational accomplishments are commendable, his conduct while in prison undermines his claim that he is a reformed man. As of July 6, 2022, Defendant's Inmate Disciplinary Record (D.E. 1191-1) consisted of 14 pages detailing 50 violation reports, the most recent on March 31, 2022. More than a dozen of these infractions were for "phone abuse – disrupt monitoring;" on one occasion, Defendant admitted to convincing another inmate to place a phone call for him to "relay messages to associate in community," which suggests that he has maintained his criminal contacts

---

2 *E.g.*, *id.* (reducing sentence under RICO and VICAR from three concurrent life terms to 30 years where defendant, during his 26 years of imprisonment, had taken over 50 courses offered by the BOP and accrued only 7 disciplinary infractions, "none in the past four years and only one of which involved violence"). *United States v. Torres*, 464 F. Supp. 3d 651, 664 (S.D.N.Y. 2020) (granting compassionate release to COVID-vulnerable brothers sentenced to life under the kingpin statute, where brothers each had one disciplinary report (for a messy cell) in almost 30 years of incarceration; "completed a plethora of courses, educational programs, and life skills programs at the prison;" "steadily maintained employment with UNICOR . . . , earning stellar reviews;" " were selected to serve as inmate facilitators in the BOP's Reaching Out to Provide Enlightenment (ROPE) program;" served as religious leaders at the prison; and "have shown a commitment to further community service if they are released."); *United States v. Rodriguez*, 492 F. Supp. 3d 306, 308, 311 (S.D.N.Y. 2020) ("Balancing Rodriguez's substantial showing of grounds for compassionate release [increased vulnerability to COVID-19 and 'the overwhelming evidence of Rodriguez's total rehabilitation,' including '[a]n extraordinary collection of letters - from fellow inmates, family, friends, and, most important, 27 members of the prison staff'] against the horrific nature of his underlying crime [racketeering, conspiracy to traffic cocaine and heroin, and murder of a confidential informant in connection with drug trafficking], the Court concludes that Rodriguez's sentence should be reduced to 30 years' imprisonment, to be followed by a lifetime of supervised release."); *United States v. Fisher,* 2020 WL 5992340 (S.D.N.Y. Oct. 9, 2020) (reducing life sentence for CCE to 38 years, where 73-year-old, medically-vulnerable defendant exhibited "exceptional rehabilitation efforts," including "obtaining his G.E.D., graduating from college, getting a master's degree and receiving a doctorate in sociology. He has assisted other inmates as a tutor and mentor," maintained a "clean disciplinary record," and there was "nothing to suggest that he has maintained his criminal contacts."); *United States v. Tidwell*, 2020 WL 4504448, at *11 (E.D. Pa. Aug. 5, 2020) (releasing terminally ill defendant serving a life sentence for, among other things, two counts of murder in furtherance of a CCE, where defendant had only 4 minor infractions in more than 25 years and BOP counselor wrote that he was "a model inmate at this institution. His work performance is above average and is [reflected] in his work evaluations. His work ethics are a model for other inmates. Inmate Tidwell also helps newly incarcerated inmates adjust to prison life by giving them guidance and counseling. Inmate Tidwell also maintains a positive attitude with staff and peers.").

while in prison. *Id.* at 2. Infractions also involved fighting, possessing dangerous weapons, using drugs/alcohol, and introducing drugs/alcohol into the prison, among other things. Sanctions have included loss of good time credit, loss of phone privileges, loss of visitation privileges, and disciplinary sentences of up to 360 days.

On this record, the Court finds that Defendant has failed to show that his post-sentencing rehabilitative efforts are extraordinary and support a sentence reduction.

### B. 18 U.S.C. § 3553(a) Factors

Defendant urges the Court to consider that he was only 22 years old at the time of sentencing and even younger when he committed the offenses of conviction. He states that he has matured both physiologically and emotionally and is now extremely remorseful for his crimes.

Defendant may have been a very young man at the time, but his actions weren't emotional reactions or crimes of passion that he committed due to a lack of impulse control. As the Government aptly points out, he "was old enough to run a CCE for several years, and did so with an iron hand." D.E. 1191, p. 10. Defendant was held accountable at sentencing for a total of 4,099 pounds of marijuana, 5 kilograms of cocaine, more than $600,000 in laundered drug proceeds, and the execution of a government cooperator. He was also involved in an unsuccessful plan to kill a co-defendant in this case. As described in the PSR, Defendant's criminal history included scored convictions for resisting arrest; reckless driving; possession of cocaine; and the unlawful carrying of a weapon. He was on probation when he was arrested in this case. At the time of sentencing, he faced pending charges in Texas state court for unlawful possession of a weapon, aggravated assault with a deadly weapon in two separate cases, and the murder of Baker. Finally, he has been disciplined for 50 violations while incarcerated.

Based on the nature and circumstances of the offenses of conviction, Defendant's history and characteristics, and the danger to the community that would be posed by his release, the Court

finds that a below-Guideline sentence would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense, nor would it deter criminal conduct or protect the public from Defendant's further crimes. *See* 18 U.S.C. § 3553(a)(2). Although the Sentencing Guidelines are no longer mandatory, if sentenced today, the Court would again sentence Defendant to Life imprisonment for his crimes.

## IV. CONCLUSION

Having considered Defendant's motion, the Government's response, Defendant's reply, the entire record of this case, and the applicable law, the Court finds that extraordinary and compelling reasons do not warrant a sentence reduction and that a reduction would be inconsistent with 18 U.S.C. § 3553(a). Defendant's Motion for Compassionate Release (D.E. 1185) is therefore **DENIED**. His Motion for Expedited Briefing in Pending Compassionate Release Motion Under 18 U.S.C. § 3582(c)(1)(A) (D.E. 1194) is further **DENIED AS MOOT**.

It is so **ORDERED** this 4th day of October, 2023.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE